**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSHUA JOEL COSBY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:21-CV-1495-RHH |
| | ) | |
| PAUL BLAIR, et al., | ) | |
| | ) | |
| Respondents. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on the Petition of Joshua Joel Cosby ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) The State has filed a response (ECF No. 6) and Petitioner, through counsel, has filed a traverse (ECF No. 20). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 25.) For the reasons that follow, the petition will be denied.

**I.    FACTUAL BACKGROUND**

Petitioner is incarcerated within the Missouri Department of Corrections. The following evidence, in the light most favorable to the verdict, was presented at trial.[1]

Petitioner's charges arise from multiple crimes that were committed on January 15, 2013, February 16, 2013, and February 23, 2013.[2]

---

[1] These facts are taken from the Missouri Court of Appeals' decision in Petitioner's direct appeal. (Resp't Ex. 5.) A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254(e)(1).

[2] Petitioner was also charged with one count of robbery in the first degree and one count of armed criminal action (Counts 1 and 2) in the robbery of a BP gas station that occurred on January 13, 2013, but was acquitted by the jury of those charges.

<u>January 15, 2013</u>

The evidence adduced at trial showed that Petitioner, wearing a large hooded jacket with the hood drawn and a wig under the hood, entered a market where Pham was working around 6:00 p.m. and pointed a gray pistol at her. Pham testified that Petitioner demanded she open the cash drawer, but he became impatient with her when she could not open the drawer quickly enough and struck her with the gun. Pham further testified that after she opened the drawer, Petitioner took the money from the drawer and from the box under the register along with a pack of cigarettes. Before leaving, Petitioner told Pham that he would kill her if she called the police. After Petitioner fled, Pham called the police. Pham described the robber as a black male in his early twenties, approximately 5'11" tall, and having a medium build with a shaggy afro.

After Petitioner's arrest, six weeks after the robbery, Pham identified Petitioner from a photographic lineup prepared by Detective Shawn Reiland of the Florissant Police Department. Detective Reiland prepared the line-up using the Crime Matrix computer system, which automatically placed Petitioner's photograph in a line-up of photographs with other African-American men of similar age, hair style, and facial characteristics. Detective Reiland told Pham that the robber may or may not be in the line-up. Pham stated that she was "very positive" that Petitioner was the robber, noting his facial features, and later identified Petitioner at trial.

<u>February 16, 2013</u>

The record on appeal shows that Daniels was working at the drive-thru window of a fast food restaurant when Petitioner entered the restaurant and pointed a silver gun at her. Daniels testified that Petitioner was wearing gray sweat pants, a mask covering the lower portion of his face, one black glove, and one gray glove. Daniels further testified that Petitioner dragged her from the drive-thru area to the cash registers and demanded she open the drawers. Petitioner took the

money from all three registers. Petitioner then forced Daniels to open the safe in the restaurant's office and subsequently allowed Daniels and another co-worker to exit the restaurant.

Daniels described the robber to police as a black male of unknown height and weight with brown eyes. After Petitioner's arrest, Daniels did not identify Petitioner as the robber in a photographic line-up that she was shown prior to trial. However, she did identify him in court as the robber of the restaurant, stating that she was certain Petitioner was the robber.

<u>February 23, 2013</u>

Johnson testified at trial that she saw Petitioner, who was wearing a hood over his head and a mask covering his lower face, enter a general store where she was working around 12:50 a.m. Johnson further testified that while she was stocking shelves, Petitioner grabbed her and pulled her to the register at gunpoint, telling her to open the register while pointing the gun at her face. Johnson told Petitioner that only the manager in the back had the key to the register. Petitioner told Johnson, "Bitch, I should kill you" before he fled the store.

Johnson described the man who attempted the robbery to police as a black male, approximately twenty years old, 5'7" to 5'9" tall, 160 to 180 pounds, with a short haircut. She also noted he was wearing a black mesh mask that covered his face below the eyes. On March 1, 2013, after Petitioner's arrest, Johnson identified Petitioner as the man who attempted to rob the store in a photographic lineup prepared by St. Louis County Detective Joseph Percich, who assembled the lineup also using the Crime Matrix computer program, similar to the procedure used by Detective Reiland. Detective Percich showed Johnson the line-up and asked if she recognized anyone. Johnson selected Petitioner's picture, stating that she recognized his eyes and the thicker piece of skin between his eyes and that she was "a hundred percent" sure that Petitioner was the robber. Johnson also identified Petitioner as the robber of the store in court.

Shortly before 1:00 p.m. on February 23, the same day as the attempted robbery of the general store, Cox was installing carpeting at an apartment complex that was within walking distance of the store. While Cox was getting tools from his van, he saw Petitioner running toward him with the hood of his jacket up and the lower portion of his face covered; Cox did not pay attention to Petitioner because he assumed Petitioner was simply jogging. Petitioner came behind Cox and said, "Give me your money," pointing a gun at Cox's head. Cox told Petitioner that he did not have any money. Petitioner responded by hitting Cox in the head with the gun, causing Cox to temporarily lose consciousness. As Cox awoke, he saw Petitioner fleeing. Cox was taken to the hospital by ambulance where he received approximately twelve stitches for the wound on his head.

Immediately after the robbery, Cox was able to describe his attacker to the police and told them the man was wearing a white jacket with the hood up and a tight-fitting black scarf that covered his nose and mouth.[3] However, after Petitioner was arrested, police showed Cox a light gray hooded sweatshirt that was found in Petitioner's apartment, but Cox could not recall if his attacker was wearing it. Police also showed clothing seized from Petitioner's residence but Cox said that the robber was not wearing any of those items of clothing. Cox did not identify Petitioner at trial as the man who robbed him because he was having trouble remembering the events due to his memory impairment that resulted from the head wound suffered during the robbery.

## February 26, 2013

Petitioner was arrested after he consented to a search of his bedroom where detectives discovered a pair of sweatpants that were similar to those worn by the suspect in the restaurant robbery. The clothing that Petitioner was wearing at the time of arrest, specifically, a dark green

---

[3] Cox testified at trial that he had trouble remembering the events because of the blow to the head. He recalled that the man who robbed him was wearing a black, purple, and white jogging suit.

jacket and one gray and one black glove, matched the description of clothing worn in both the restaurant and the market robberies. Upon searching the remainder of Petitioner's residence, pursuant to a valid search warrant, police also discovered a sweatshirt similar to the one worn by the robber of the general store. A search of Petitioner's cellular phone, also pursuant to a valid search warrant, revealed pictures and videos of Petitioner wearing clothing similar to those worn by the robber of the restaurant and store. The aforementioned pre-trial identifications by Pham and Johnson were made shortly after Petitioner was arrested.

At trial, over Petitioner's objections to the testimonies of Pham, Daniels, and Johnson, each identified Petitioner in court as the perpetrator in their respective incidents. Petitioner's motions to suppress Pham's and Johnson's pre-trial identifications were also denied. After the trial court denied Petitioner's motion for judgment of acquittal on all counts, the jury found Petitioner guilty of two counts of first-degree robbery, two counts of attempted first-degree robbery, one count of first-degree assault, and five counts of armed criminal action. The jury acquitted him of one count of first-degree robbery and one count of armed criminal action arising from a January 13, 2013 robbery of a BP gas station. On July 13, 2016, Petitioner was sentenced to concurrent thirty-year sentences for the robbery, attempted robbery, and armed criminal action charges, and a consecutive ten-year sentence for the assault charge for a total of forty years in the Department of Corrections. On August 29, 2017, the appellate court confirmed the convictions and sentence. *State v. Cosby,* 527 S.W.3d 188 (Mo. App. E.D. 2017). Petitioner thereafter timely filed a Rule 29.15 motion, and his claims were denied after an evidentiary hearing. He raised eight points on post-conviction appeal, and the appellate court affirmed the denial of post-conviction relief. *Cosby v. State,* 617 S.W.3d 523 (Mo. App. E.D. 2021).

On December 22, 2021, the instant § 2254 federal habeas Petition was filed by Petitioner.

## II.    STANDARD OF REVIEW

"[H]abeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citation and quotation marks omitted). This Court's review of the petition for habeas corpus is limited by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. *Id.* at 97. AEDPA "bars relitigation [in federal court] of any claim adjudicated on the merits in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)." *Harrington*, 562 U.S. at 98. Accordingly, a state habeas petitioner is not entitled to relief unless the state court proceedings:

> (1) resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. *Id.* at 380–83. "A state court's decision is 'contrary to' clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme Court's conclusion on a set of materially indistinguishable facts." *Carter v. Kemna*, 255 F.3d 589, 591 (8th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "A federal court may grant relief under the 'unreasonable application' clause if the state court correctly identified the governing legal principle, but unreasonably applied it to the facts of the particular case." *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "A state court's application of clearly established federal law

6

must be objectively unreasonable, and not merely incorrect, to warrant the granting of a writ of habeas corpus." *Jackson*, 651 F.3d at 925 (citing *Bell*, 535 U.S. at 694).

Finally, when reviewing whether a state court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the state court proceedings, state court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007). "[E]ven erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

The federal court is "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). To obtain habeas relief from a federal court, the petitioner must show that the challenged state court ruling "rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (cleaned up). This standard is difficult to meet. *Id.* at 357-58.

## III.    DISCUSSION

Petitioner raised each of his thirteen grounds with the state courts, and the Missouri Court of Appeals denied relief on review of the merits. Petitioner argues that the appellate court's erroneous rulings deprived Petitioner of his constitutional rights and warrant habeas relief. Respondent does not dispute that Petitioner has exhausted his claims. Respondent argues that this Court should defer to the reasonable decisions of the Missouri Court of Appeals. The Court turns to the merits of each claim.

### A.  Ground 1

In Ground 1 of his petition, Petitioner asserts as follows: "The trial court erred in overruling Mr. Cosby's motion for a judgment of acquittal and in convicting and sentencing Mr. Cosby for the assault, attempted robbery, and armed criminal action offenses against Billy Cox, because the evidence was insufficient to prove Mr. Cosby guilty of those offenses beyond a reasonable doubt. The Missouri Court of Appeals affirmed the ruling of the trial court. Those rulings deprived Mr. Cosby of his right to due process as guaranteed by the Fourteenth Amendment." (ECF No. 1, p. 10.)

A state appellate court's conclusion that the evidence was sufficient to support a criminal conviction is entitled to great deference by a federal court. *Jackson v. Virginia*, 443 U.S. 307, 323 (1979). Under *Jackson*, a habeas petitioner is entitled to relief if a federal habeas court "conclude[s] that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Nash v. Russell*, 807 F.3d 892, 897 (8th Cir. 2015). In applying this standard, the federal habeas court does not re-weigh the evidence and must resolve any inconsistencies in favor of the prosecution. *Id.* Under the AEDPA, the Court may grant relief only if it finds the Missouri Court of Appeals' "conclusion that the evidence satisfied the *Jackson* sufficiency of the evidence standard both incorrect and unreasonable." *Id.* "[W]hether the record contains sufficient evidence to establish each element of the crime beyond a reasonable doubt 'is everyday business for the state courts, grist for their mill, and it will be a rare case in which a federal court on habeas will disagree with them.'" *Cassell v. Lockhart*, 886 F.2d 178, 179 (8th Cir. 1989) (quoted case omitted).

Petitioner raised this claim on direct appeal, and the Missouri Court of Appeals denied the claim as follows:

Defendant argues that the circumstantial evidence offered by the State was insufficient to show that Defendant was the man who assaulted and attempted to rob Cox. "The State has the burden of proof and must establish each and every element of a criminal case." *State v. Sonnier,* 422 S.W.3d 521, 523 (Mo. App. E.D. 2014). The State can prove each element of the crime by submitting direct or circumstantial evidence that connects the defendant to said element. *State v. Burns,* 444 S.W.3d 527, 529 (Mo. App. E.D. 2014). Circumstantial evidence has the same weight as direct evidence, and the trier of fact may make reasonable inferences from the evidence presented. *Id.*

Defendant, specifically, claims that Cox's description of the robber as a black man wearing a white jacket with a tight-fitting black scarf covering his face was insufficient circumstantial evidence to establish that the robber was the same man (Defendant) who robbed the nearby general store on the same day because that description was too generic. We disagree.

The record shows that Defendant, an African-American man, was wearing a light gray hooded sweatshirt and a black mask when he attempted to rob the general store that was within walking distance from where Cox was robbed and assaulted. Immediately after he was robbed, Cox's description of the robber's clothing matched the articles of clothing worn by the Defendant when he robbed the general store and those found in Defendant's apartment. However, Cox had difficulty recalling the specific events at trial because of the head injury he suffered during the robbery. In addition to the clothing found in Defendant's apartment that matched those worn by the robber of the general store, Defendant's own girlfriend also identified him as the robber after viewing surveillance tape of the robbery. The robber in both instances used a dark-colored gun and the location where Cox was robbed was geographically close to the store. Viewed in the light most favorable to the trial court's verdict, we find that the circumstantial evidence here was sufficient for a trier of fact to reasonably conclude that Defendant was the man who attempted to rob Cox.

(Ex. 5, pp. 7-8).

Petitioner now argues that the state court did not address the disparity between Ms. Johnson's certainty that her assailant was wearing the hooded gray sweatshirt introduced into evidence, Mr. Cox's equivalent certainty that his assailant had been wearing a purple, white, and black jogging outfit, and Officer Bakula's certainty that Mr. Cox had described an assailant in a white jacket. (ECF No. 20, p. 10.) However, as the standard of review requires the Court to disregard all evidence and inferences that are contrary to the verdict, I must infer that when

presented with all of the evidence, including inconsistencies in witness testimony, the jury concluded that Petitioner was Billy Cox's assailant. Upon review of the record, the Court concludes the Missouri Court of Appeals' determination that the trial court did not err in denying Petitioner's motion for judgment of acquittal at the close of all the evidence on the assault, attempted robbery, and armed criminal action charges with respect to Billy Cox is entitled to deference. The Court cannot say on the record evidence adduced at the trial that no rational trier of fact could have found proof of guilt beyond a reasonable doubt on these counts. *See Nash,* 807 F.3d at 897. The Missouri Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented, and Ground 1 is denied. 28 U.S.C. §§ 2254(d)(1), (2); *Williams,* 529 U.S. at 379.

### B.  Grounds 2 and 3

In Ground 2 of his petition, Petitioner asserts that "[t]he trial court erred in denying Mr. Cosby's motion to suppress evidence that Ms. Pham and Ms. Johnson had identified him in extrajudicial proceedings as the individual who robbed the store. The identification procedures employed by the police detectives were improperly suggestive and rendered the witness identifications unreliable." (ECF No. 1, p. 11.) Similarly, in Ground 3 Petitioner asserts that "[t]he trial court erred in admitting Ms. Pham's and Ms. Johnson's in-court identifications of Mr. Cosby because the initial identification procedures used by Detective Reiland and Detective Percich had been improperly suggestive and tainted the subsequent in-court identifications." (ECF No. 1, p. 13.)

Suggestive pretrial procedures, without more, do not require a finding that due process rights have been violated. The issue is whether the pretrial identification procedures created a

"substantial likelihood of irreparable misidentification," or whether the in-court identification had a reliable and independent basis. *Cotton v. Armontrout*, 784 F.2d 320, 322 (8th Cir. 1986) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 116 (1977)). Factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *United States v. Murdock*, 928 F.2d 293, 297 (8th Cir. 1991) (quoting *Braithwaite*, 432 U.S. at 114; *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)). Although the ultimate question of the constitutionality of admitting an in-court identification is not governed by § 2254, the questions of fact that underlie this conclusion are governed by the statutory presumption. *Graham v. Solem*, 728 F.2d 1533, 1542 (8th Cir. 1984).

Petitioner raised these claims on direct appeal, and the Missouri Court of Appeals denied them as follows:

> Courts apply a two-prong test to determine whether identification testimony is admissible. *Harris,* 483 S.W.3d at 491. First, a court must determine whether the pre-trial procedure is unduly suggestive; "[a] pre-trial identification procedure is unduly suggestive only if the identification is the result of the procedures used by the police rather than a result of the witness's recollection." *Ivy,* 455 S.W.3d at 17. "The key issue in determining whether unduly suggestive pre-trial procedures tainted the identification is whether the witness has an adequate basis for the identification independent of the suggestive procedure." *Id* at 19. Any pre-trial and in-court identification is admissible unless it is unduly suggestive. *Id.* Second, if the procedure is unduly suggestive, the court must determine "whether the suggestive procedures have so tainted the identification as to lead to a substantial likelihood that the pre-trial identification was not reliable." *Harris,* 483 S.W.3d at 491 (quoting *State v. Chambers,* 234 S.W.3d 501, 513 (Mo. App. E.D. 2007).
>
> Here, we need not proceed past the first prong for either Point II or Point III. From the record before us, neither pre-trial identification procedure was unduly suggestive in regards to the identifications made by Pham and Johnson. Both Detective Reiland and Detective Percich assembled six-person photographic line-ups using photographs of five other African-American men of similar age, height, weight, hair styles, and facial features to that of Defendant, as described by the

witnesses, that were selected by the Crime Matrix computer program. Neither detective stated that the suspect was in the line-ups and neither detective acted in a way that would have influenced Pham or Johnson to choose Defendant's photograph.

Defendant asserts that the athletic clothing and features and colors of the clothing worn by Defendant, as compared to those of the other men in the line-ups, makes the identification procedures unduly suggestive, but fails to provide any case law that would support this. "Dissimilarity in physical appearance, alone, is insufficient to establish impermissible suggestion.... as long as no one individual clearly stands out in the lineup, the law does not require exact conformity [of physical characteristics]." *Harris,* 483 S.W.3d at 492–93 (Mo. App. E.D. 2016) (quoting *State v. Conrick,* 375 S.W.3d 894, 900 (Mo. App. W.D. 2012)). Moreover, "[a] lineup will be deemed impermissibly suggestive on the basis of the color or characteristics of clothing only if the clothing is the sole basis for identification." *State v. Morgan*, 480 S.W.3d 349, 352 (Mo. App. E.D. 2005) (citing *State v. Weaver*, 912 S.W.2d 499, 520 (Mo. banc 1995)).

In this case, Defendant has not shown that the dissimilarity of any physical characteristic of Defendant to the other men in the line-ups caused him to stand out as to make the identification procedures unduly suggestive. Additionally, both Pham and Johnson stated they identified Defendant as the robber because of his eyes, nose, and forehead region—the only parts of Defendant's face that were not covered during the robberies. Neither Pham nor Johnson stated that they recognized Defendant because of his clothing. Accordingly, Defendant has not shown the identification procedure was unduly suggestive, as both witnesses identified Defendant based on their recollection and we need not move to the second prong of reliability. Points II and III are denied.

(Ex. 5, pp. 9-11.)

Petitioner argues that his argument in the appellate court and here is not that the witness identifications were premised on the clothing in which he was displayed in photos; rather, Petitioner argues "the distinguishing manner in which he was presented" to the witnesses brought their attention to him in the first instance. As to Johnson's identification of Petitioner, he argues that the "singular red shirt" in which Petitioner was displayed combined with the detective's informing her before the lineup that a suspect was in custody gave the police the opportunity to influence the identification process to an extent that defied fundamental fairness. As to Pham's identification of Petitioner, he more specifically argues that the athletic logo on display in the photo

array and the police's expressed expectation that she would be identifying the robber from that lineup were "precisely" the sort of identification-enhancing techniques that give rise to a substantial likelihood of irreparable misidentification. He further argues that having Pham view the surveillance video affected her identification instead of allowing the photo array to serve as a test of her memory and personal observations.

Petitioner raised his argument regarding Detective Reiland showing Pham the surveillance video on direct appeal. However, in finding the identification made by Pham was not unduly suggestive, the appellate court did not discuss Pham's testimony that "the cops showed me the video of the robbery, and then they showed me the lineup, and right after they gave me the lineup, I picked him out." (Ex. 22, p. 112.) Nevertheless, courts have found that "surveillance video of the actual incident is not impermissibly suggestive, but rather a valid and reliable form of refreshing the witness's recollection." *See, e.g., United States v. Adams*, 2016 WL 385965, at *7 (D. Minn. Jan. 7, 2016) (rejecting argument that the identification procedure was unduly suggestive because the witness viewed the surveillance video prior to being presented with the photo lineup) (citing *United States v. Ervin,* 436 F.2d 1331, 1333-34 (5th Cir. 1971)), *report and recommendation adopted sub nom. United States v. Doss*, 2016 WL 386035 (D. Minn. Feb. 1, 2016), and *report and recommendation adopted sub nom. United States v. Lacey*, 2016 WL 447455 (D. Minn. Feb. 4, 2016), and *report and recommendation adopted sub nom. United States v. Dickens*, 2016 WL 447456 (D. Minn. Feb. 4, 2016). Additionally, "even where an impermissibly suggestive identification has been employed, identification evidence may properly be admitted where, in the totality of circumstances, the suggestive procedure did not give rise to a 'very substantial likelihood if irreparable misidentification.'" *United States v. Manko*, 694 F.2d 1125, 1127 (8th Cir. 1982) (citing *Braithwaite,* 432 U.S. at 116) (rejecting argument that use of single surveillance

photograph followed by use of six-person photo lineup constituted impermissibly suggestive identification procedures under the totality of the circumstances).

Here, the appellate court applied the correct analysis to assess the constitutionality of the identifications by Pham and Johnson and found no error. As the appellate court noted, neither Johnson nor Pham stated they recognized Petitioner from his clothing. *See Hayes v. Bowersox*, No. 4:12 CV 2246 JMB, 2016 WL 659081, at *13 (E.D. Mo. Feb. 18, 2016) (citing *United States v. Sublet,* 644 F.2d 737, 742 (8th Cir. 1981)) (where eyewitnesses testified at trial that they recognized the petitioner from his face, "the identifications were not based solely upon the clothes that Hayes was wearing," and the state court's finding that "the lineups were not impermissibly suggestive" was consistent with federal due process law). As to Johnson's identification of Petitioner in the line up where we wore a red shirt, Detective Percich testified at the suppression hearing that he included another photo in the array of a man in a bright red shirt—the only other person in the database that matched the other criteria and also had on a red shirt. (Ex. 20, p. 30.) Additionally, both witnesses testified that the police did not tell them whether or not the person who robbed them would be included in the photo array presented. (Ex. 22, p. 303, 324, 390.) There was no evidence that the detectives suggested who the witnesses should identify from the array. Petitioner has failed to show the police procedure was impermissibly suggestive or that the photographic identification by Johnson or Pham posed a substantial likelihood of misidentification under the circumstances of the respective identifications.

Nothing in the Petitioner's petition or traverse, or in the prior courts' records, suggests the evidentiary rulings were "so conspicuously prejudicial or of such magnitude as to fatally infect the trial" or "so egregious that [it] fatally infected the proceedings and rendered [petitioner's] entire trial fundamentally unfair." *See Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005) (federal

14

courts can review a state court evidentiary ruling in a habeas petition only to determine if the asserted error denied due process; that is, the evidentiary ruling is "so conspicuously prejudicial or of such magnitude as to fatally infect the trial"); *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). Accordingly, the trial court's decision to admit the pretrial and in-court identification evidence was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court. The claims raised in Grounds 2 and 3 are denied.

## C. Ground 4

In Ground 4, Petitioner argues that "[t]he trial court erred in admitting Theresa Daniel's in-court identification of Mr. Cosby because there was insufficient foundation for her testimony. Ms. Daniels' limited opportunity to observe the robber, limited description of him after the robbery, and inability to identify him prior to trial, together with the suggestive and coercive context in which her trial testimony was elicited, resulted in a substantial likelihood that the identification was not reliable." (ECF No. 1, p. 14.)

Petitioner raised this claim on direct appeal, and the Missouri Court of Appeals denied the claim as follows:

> In Point IV, Defendant argues that Daniels's in-court identification of Defendant was unreliable, but he does not argue that the identification procedures were unduly suggestive. As stated previously, identification testimony is admissible unless the pre-trial identification procedure is impermissibly suggestive and this suggestive procedure made the identification unreliable. *Ivy,* 455 S.W.3d at 17. This two-prong test requires that we find that the pre-trial identification process be unduly suggestive before we move to the second prong of reliability. *Id.* As the State correctly stated in its brief, a court should only make a determination of reliability after the defendant establishes improper police conduct. *State v. Russell,* 462 S.W.3d 878, 883 (Mo. App. E.D. 2015) (citing *Perry v. New Hampshire,* 132 S.Ct. 716, 726 (2012)).
>
> Defendant has failed to establish that the identification procedures used by police were unduly suggestive in regards to the in-court identification made by Daniels. Additionally, the record does not indicate that the pre-trial identification procedures were unduly suggestive. If anything, the record suggests the opposite,

as Daniels did not identify Defendant in the pre-trial photographic lineup prepared by Officer Reiland, but rather identified Defendant at trial as the robber of the restaurant. As such, Defendant has failed to establish the identification procedures used by police were unduly suggestive and we need not address Defendant's argument that Daniels's in-court identification was unreliable. Because the pre-trial identification procedures used leading up to Daniels's in-court identification were not unduly suggestive, Point IV is denied.

(Ex. 5, pp. 11-12.)

Petitioner broadly argues that the appellate court's rationale was not a reasonable application of *Wade, Brathwaite, Cole,* and *Biggers. See United States v. Wade,* 388 U.S. 218, 242 (1967); *Manson v. Brathwaite,* 432 U.S. 98, 116 (1977); *Cole v. Alabama,* 399 U.S. 1, 5 (1970); *Neil v. Biggers,* 409 U.S. 188, 198-200 (1972). Petitioner asserts that Daniels' limited opportunity to observe the robber, limited description of him after the robbery, and inability to identify him prior to trial together with the failure of prosecutorial and law enforcement personnel to provide her with any further identification opportunity during the three years between the robbery and trial elicited an unreliable identification that was constitutionally inadequate.

"The issue is whether the pretrial identification procedures created a substantial likelihood of irreparable misidentification, or whether the in-court identification had a reliable and independent basis." *Cotton*, 784 F.2d at 322 (citing *Braithwaite*, 432 U.S. at 114). When the state court's factual findings are given proper deference under 28 U.S.C. § 2254(d), there is sufficient evidence in the record to support them. Daniels testified regarding her interaction with her assailant, the gun he pointed at her, her description of him to the police, and why she was able to identify him at trial. (Ex. 22, pp. 141-176.) Petitioner makes much of the fact that Daniels was unable to provide an out of court identification to the police. But the Eighth Circuit does not require in-trial identifications to be preceded by pretrial lineups. *United States v. Wade*, 740 F.2d 625, 628 (8th Cir. 1984); *see also United States v. Ostertag*, 619 F.2d 767, 771 (8th Cir. 1980) (no

constitutional right to a pretrial lineup). Where Petitioner's argument does not involve a claim of impermissible suggestiveness on the part of the police, but rests entirely on factors relating to the reliability of the identification made by a witness, he has no valid basis for arguing that the witness' identification testimony should have been suppressed, because any such factors go to the weight of the testimony, not its admissibility. *Woods v. Norman*, 2018 WL 10152631, at *6 (W.D. Mo. Oct. 25, 2018) (citing *State v. Winters,* 900 S.W.2d 636, 640-41 (Mo. App. W.D. 1995)). *See also United States v. Murdock*, 928 F.2d 293, 297 (8th Cir. 1991) (when witnesses positively identified the defendant for the first time in court, defendant's argument that their testimony was tainted by the fact that he was sitting at the defense table and was the only African-American in the room was rejected where defendant did not request special seating in the courtroom at the time of the identification and the identification was open to attack on cross-examination such that there was no substantial likelihood of misidentification).

A review of the record and the parties' briefing indicates no error. Therefore, because the state court's determinations did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. § § 2254(d)(1) and (2). Ground 4 is denied.

### D. Ground 5

In Ground 5 of his petition, Petitioner asserts the post-conviction motion court erred in concluding the prosecution had not committed an actionable Brady violation by withholding Marquis Wilson's exculpatory oral statement from the defense. Petitioner states that in the undisclosed statement Mr. Wilson told police that investigating officers previously coerced him

into implicating Petitioner in robbery, and Petitioner and his counsel did not discover the exculpatory statement until after the conclusion of Petitioner's direct appeal. (ECF No. 1, p. 15.)

The appellate court addressed the issue and agreed with the motion court that Petitioner did not establish a *Brady* violation:

> Marquise Wilson was Movant's friend and coworker in January and February 2013. After Movant robbed the Arby's, Wilson picked Movant up in his vehicle. Because Wilson was effectively Movant's getaway driver, Florissant police identified and "picked up" Wilson for questioning about the robbery. Wilson initially told the police he did not know the Arby's had been robbed when he picked Movant up. After further questioning, Wilson told the police Movant was wearing the same clothing as the robber on the Arby's surveillance video, was breathing heavily when he got in Wilson's car, and confessed to the Arby's robbery and at least one other uncharged robbery. Wilson later changed his story and claimed the police coerced him into implicating Movant.

> At Movant's evidentiary hearing, Wilson testified he falsely implicated Movant in the Arby's robbery because he thought it was what the police wanted to hear. Wilson testified the police "coerced" him into implicating Movant by interrogating him for "[r]oughly nineteen, twenty some odd hours about the [Arby's] robbery" and threatening him with robbery charges. Wilson testified he only changed his story after the police threatened to charge him. Wilson testified he was released after questioning and was not charged. Wilson claimed he would have testified on Movant's behalf at trial had he been called.

> In Point I, Movant argues the State violated the principles of *Brady v. Maryland* and Missouri Supreme Court Rule 25.03 by failing to adequately inform him of Wilson's exculpatory statements and claims of coercion before trial. 373 U.S. 83 (1963). It violates due process to suppress evidence that is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. To establish a *Brady* violation, the accused must prove the government willfully or inadvertently suppressed evidence favorable to the accused because it was exculpatory or could be used for impeachment, and its suppression prejudiced the defendant. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Rule 25.03 imposes diligence and good faith obligations on prosecutors to find and disclose exculpatory material to criminal defendants before trial upon written request. *Merriweather v. State*, 294 S.W.3d 52, 56 (Mo. banc 2009).

> Violations of discovery rules are trial errors, which are generally outside the scope of Rule 29.15 motions and are only considered "where fundamental fairness requires, and then, only in rare and exceptional circumstances." *Id*. (citing *State v. Carter*, 955 S.W.2d 548, 555 (Mo. banc 1997)). Even if Movant's *Brady* allegation

constituted a "rare and exceptional circumstance" warranting consideration here, it would fail. Movant claims "it would appear that the motion [court] did not review this claim because it did not find the allegation serious." We disagree.

At the evidentiary hearing, Movant's trial counsel and the prosecutor in the underlying criminal case testified the State disclosed Wilson as a potential and endorsed witness months before trial, fulfilling the State's obligations under *Brady*. Trial counsel testified he conversed with the State about Wilson's potential testimony before trial. Trial counsel testified the State informed him Wilson had changed his story and the State was not going to call Wilson to the stand at trial. Further, Wilson's statements were disclosed in discovery documents, including police reports. Trial counsel ultimately decided not to call Wilson after considering the high risk of impeachment on cross-examination. The motion court credited trial counsel's and the prosecutor's testimony. We defer to the motion court's credibility findings. *Twenter*, 818 S.W.2d at 635. The motion court did not clearly err in holding Movant failed to establish a cognizable *Brady* violation. *Strickler*, 527 U.S. at 281-82.

(Ex. 15, pp. 7-9.)

Petitioner argues that this Court is not required to defer to the appellate court's analysis because the appellate court "based its decision first on the notion that the claim arose from a discovery rule breach rather than a due process violation." (ECF No. 20, p. 23.) As an initial matter, this argument overlooks the appellate court's analysis, which explains that even if Petitioner's *Brady* allegation constituted a "rare and exceptional circumstance" that puts discovery rule violations within the scope of Rule 29.15 motions, this argument would fail because Wilson's statements were disclosed in police reports and other discovery documents, and Petitioner's trial counsel testified that the prosecutor informed him about Wilson's potential testimony before trial and that the State decided not to call Wilson because Wilson changed his story.

In *Brady*, the Supreme Court held that due process is violated where the State fails to disclose evidence that is favorable to the accused and material to either guilt or punishment. *Villasana v. Wilhoit*, 368 F.3d 976, 978 (8th Cir. 2004) (citing *Brady*, 373 U.S. at 87). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense,

19

the result of the proceeding would have been different. *United States v. Bagley,* 47733 U.S. 667, 682 (1985).

Here, the state courts found that Wilson's statements were disclosed, and Petitioner was aware Wilson changed his story. "When 'the existence of the allegedly suppressed evidence bec[omes] known to the defense,' there is no *Brady* violation." *Wilson v. Dan Redington,* No. 4:18-CV-00932 JAR, 2020 WL 569885, at *2 (E.D. Mo. Feb. 4, 2020) (quoting *Villasana,* 368 F.3d at 979). The state court's factual determinations are presumptively correct *see* 28 U.S.C. § 2254(e)(1), and the finding that the prosecution did not withhold Wilson's statements are consistent with the record. Additionally, to the extent Petitioner seeks to move focus to his allegation that the police used coercive techniques to obtain Wilson's statement, the motion court correctly acknowledged that it "reviews claims of prosecutorial misconduct under Rule 29.15 only when the alleged misconduct was serious and would not have been apparent at trial." (Ex. 10, p. 118.) Moreover, Petitioner's argument that evidence of police "using coercive techniques to obtain inculpatory statements" was material and would have provided "important opportunities for investigation and cross-examination of police officers and witnesses from whom they obtained identifications" is speculative and fails to establish a "reasonable probability" of a different outcome. Trial counsel's testimony at the postconviction hearing reflects that he knew Wilson was a potential witness, he spoke with Wilson before trial, and he ultimately decided not to call Wilson as a witness. *See United States v. Stuart*, 150 F.3d 935, 937 (8th Cir. 1998) ("Evidence is not suppressed if the defendant has access to the evidence prior to trial by the exercise of reasonable diligence."); *Williams v. Pash*, 2017 WL 3611992, at *3 (W.D. Mo. Aug. 22, 2017) (denying habeas relief where petitioner's counsel acknowledged he was aware of the recorded interview at

issue but did not follow up to see if the recording was available). Petitioner has not advanced clear and convincing evidence that the state court's determination was erroneous. Ground 5 is denied.

### E. Ground 6

In Ground 6, Petitioner asserts ineffective assistance of counsel based on the failure of his trial counsel to interview, investigate, and adduce the testimony of Marquis Wilson. (ECF No. 1, p. 16.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court determined that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments. The right to counsel is "the right to effective assistance of counsel." *McCann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Under *Strickland*, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

In order to prevail on an ineffective assistance claim, a petitioner must prove that (1) counsel's representation "fell below an objective standard of reasonableness," measured under "prevailing professional norms," *id.* at 688, and (2) "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotations and citations omitted).

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. The performance and prejudice prongs of *Strickland* can be addressed in either order, and "[if] it is easier to dispose of a ineffectiveness claim on the ground of lack of sufficient prejudice...that course should be followed." *Id.* at 697.

Petitioner raised this claim in his post-conviction appeal, and the appellate court found:

> In Point II, Movant argues the motion court clearly erred by concluding trial counsel was not ineffective for failing to investigate and call Marquise Wilson as a witness because Wilson's testimony would have been exculpatory. Movant argues it would have been strategically advantageous for the jury to hear Wilson testify he implicated Movant in the Arby's robbery because the policed coerced him. In Movant's view, Wilson's testimony would have created reasonable doubt about whether Movant committed the Arby's robbery because his defense theory was misidentification. Movant reasons trial counsel's failure to call Wilson prevented him from defending himself.

> As we discussed in Point I, trial counsel testified he was aware of Wilson because of the prosecution's disclosures. Trial counsel also testified that he spoke with Wilson by phone. Trial counsel testified he strategically chose not to call Wilson at trial because it would have been damaging for the jury to hear Wilson admit he implicated Movant in the Arby's robbery and lied to the police to protect himself.

> "Generally, the selection of witnesses and the introduction of evidence are questions of trial strategy and virtually unchallengeable." *Johnson v. State*, 333 S.W.3d 459, 463-64 (Mo. banc 2011). There is a "strong presumption" attorneys are not ineffective for failing to call a witness. *Hurst v. State*, 301 S.W.3d 112, 117-18 (Mo. App. E.D. 2010). To prove ineffectiveness, "movants must clearly establish that the decision to forego calling a witness was not trial strategy." *Id*. Specifically, movants must establish (1) trial counsel knew or should have known of the witness; (2) the witness could have been located through reasonable investigation; (3) the witness would have testified if called; and (4) the witness's testimony would have provided the movant with a viable defense. *Williams v. State*, 168 S.W.3d 433, 441 (Mo. 2005).

> The motion court credited trial counsel's testimony he strategically decided not to call Wilson because (1) Wilson's presence at the scene would have damaged Movant's misidentification defense and (2) Wilson lacked credibility because he admitted he lied to the police and changed his story multiple times to protect himself. We defer to the motion court's findings regarding the credibility of

witnesses. *Twenter*, 818 S.W.2d at 635. Further, we find no clear error in the motion court's conclusion Movant was not prejudiced because the other testimonial and circumstantial evidence of Movant's guilt was overwhelming: the jury was shown the Arby's surveillance video, the Arby's clerk identified Movant in court, Movant's girlfriend identified Movant to police after reviewing still images from the Arby's surveillance video, and pictures on Movant's cell phone established he was wearing the same clothing as the Arby's robber on the day of the robbery.

The motion court did not clearly err by concluding trial counsel was not ineffective for deciding not to call an unreliable witness whose testimony would have been of little value to Movant's defense. *Williams*, 168 S.W.3d at 441.

(Ex. 15, pp. 9-10.)

The undersigned finds that the decision by the motion court and the appellate court was not contrary to, or an unreasonable application of, the standard articulated by the Supreme Court in *Strickland.* The record demonstrates that Petitioner's attorney had a strategic reason for not calling Wilson as a witness because Wilson's presence at the scene would have damaged the misidentification theory of the case and because Wilson changed history and admitted he did so to protect himself. Although Wilson testified at the evidentiary hearing that he did not speak to Petitioner's attorneys and that the police coerced his statement, the motion court found that Petitioner's trial counsel credibly testified regarding not calling Wilson as part of his trial strategy after speaking with the prosecutor.

Decisions regarding witness selection are normally left to counsel's judgment, and courts do not second-guess this judgment by hindsight. *Hanes v. Dormire,* 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). Trial counsel determined the nature and content of Wilson's potential testimony was unlikely to be helpful. Wilson testified at the evidentiary hearing that during an interrogation by the police, Wilson implicated Petitioner in the robbery of the Arby's, the Imo's, and a small market. (Ex. 7, pp. 64, 71, 72.) When the prosecutor's office later reached out closer to trial, Wilson told them his earlier statements were not accurate. (Ex. 7, pp. 72.) Trial counsel

testified that after learning from the prosecutor that Wilson changed his story and after talking to Wilson on the phone, he made the strategic decision not to call Wilson because his earlier statements would have come into evidence. (Ex. 7, pp. 13-17, 42.) Given the uncertainty and potential harm of Wilson's testimony, either on direct or cross examination, the undersigned does "not believe any of the proffered testimony was so important as to put counsel's failure to ... call [Wilson] outside the wide bounds of strategic choices that counsel is afforded." *Hanes,* 240 F.3d at 698. Because Petitioner is unable to demonstrate that trial counsel's performance was deficient, the Court need not address whether Petitioner was prejudiced. *Parkus v. Bowersox,* 157 F.3d 1136, 1140 (8th Cir. 1998). Ground 6 is denied.

## F.  Ground 7

In Ground 7, Petitioner asserts ineffective assistance of counsel based on the failure of his trial counsel to review audio-visual evidence with him prior to trial, including the video recording of Wilson's interview, which led to counsel's uninformed decision to proceed to trial without calling Wilson to testify and without otherwise illustrating the misconduct and unfounded assumptions of overzealous police investigators for the jury.

Petitioner raised this claim in his post-conviction appeal, and the appellate court found:

In Point III, Movant argues the motion court clearly erred by concluding trial counsel was not ineffective for failing to review audio and video evidence with Movant. Movant claims trial counsel's failure prevented Movant from assisting in his defense. Movant alleges trial counsel failed to show him the video and audio evidence against him until the first day of his trial. Movant argues he was unable to make an informed decision about whether to accept a plea offer or proceed to trial. Movant argues if trial counsel would have showed him the evidence earlier, he may have chosen not to proceed to trial.

Movant asserts trial counsel had "no reason" not to review the audio and video evidence with him before the first day of trial. He notes the trial court made a record before *voir dire,* stating:

> And the last thing is your lawyer, I guess, has a desktop computer but isn't able to play that DVD surveillance video on his laptop, so I've asked the State to get a laptop that will permit those DVDs to get play[ed] for you. I don't like to start jury selection without folks really getting a chance to see their evidence, you know what I mean?

> The court took a recess to allow Movant and trial counsel to review the footage, then proceeded to *voir dire*. Movant seems to argue the recess was not enough time for him to review the evidence and process it in a meaningful way. Movant cites no authority to support his argument.

> The State argues Movant had sufficient opportunity to review the discovery and his claim he did not see the video evidence until trial is false. The State notes Movant was on probation when he was charged with the underlying crimes. On August 6, 2014, Movant appeared for a probation revocation hearing, where the State presented the video evidence Movant claims he never saw. Trial counsel testified Movant was determined to go to trial and more time with the video evidence would not have changed his mind. The State notes Movant had complete copies of the paper discovery months before trial and concludes additional time with the video evidence would not have changed Movant's mind about proceeding.

> The motion court credited trial counsel's testimony and concluded Movant knew the magnitude and quality of evidence against him. The motion court found additional review of the discovery would not have convinced Movant to accept a plea offer. We defer to the motion court's fact finding and evaluation of the credibility of the witnesses. *Twenter*, 818 S.W.2d at 635. The motion court did not clearly err by finding trial counsel was not ineffective in his review of the evidence with Movant before trial.

(Ex. 15, pp. 11-12.)

Petitioner argues that trial counsel's failure to meet with Petitioner prior to trial to review the video recording of Wilson's statement deprived Petitioner of the opportunity to participate in and contribute to his own defense. Petitioner's argument ignores the state court's factual finding that Petitioner appeared for a probation revocation hearing in 2014 where the video of Wilson's statement was presented before trial. Additionally, Petitioner was able to watch the video during the recess immediately preceding trial, and Petitioner's counsel had previously gone over the paper discovery with him before trial. The undersigned finds that the state court did not err in its holdings nor apply the facts unreasonably. Ground 7 is denied.

## G.  Ground 8

In Ground 8, Petitioner asserts ineffective assistance of counsel based on the failure of his chosen and retained trial attorney to communicate with him prior to trial, and on that attorney's abandonment of Petitioner and assignment of trial defense to his less experienced assistant.

Petitioner raised this claim in his post-conviction appeal, and the appellate court found:

> Movant hired private trial counsel in the underlying case and was initially represented by Terence Niehoff. As discussed, Movant's probation was revoked in August of 2014 after he was charged with the underlying crimes in this case. At the evidentiary hearing, Niehoff testified the State offered Movant a plea of fifteen years in the DOC to resolve his revoked probation and pending charges. Niehoff testified he advised Movant to accept the plea because proceeding to trial would risk a significantly longer sentence as a prior and persistent offender. Movant rejected Niehoff's advice and insisted on proceeding to trial. The disagreement between Movant and Niehoff impaired their ability to cooperate, so Niehoff's partner Michael Hufty began handling Movant's case in 2015. Hufty appeared in court multiple times on Movant's behalf before trial, filed motions with the court, and represented Movant at trial. Movant first alerted the trial court he felt Niehoff abandoned him at sentencing.

> In Point IV, Movant argues the motion court clearly erred by concluding his right to effective assistance of counsel was not violated when Niehoff "abandoned" Movant's case to Hufty. Movant asserts he specifically hired Niehoff because of Niehoff's experience practicing as a criminal defense attorney and never agreed to receive anyone else's services. Movant argues the case would have had a different outcome if Niehoff represented him at trial. He claims Hufty told him it was too late to withdraw on the day of trial, leaving Movant "no other alternative than to proceed with Mr. Hufty against his wishes."

> The denial of a criminal defendant's right to the counsel of their choice is structural error, regardless of the quality of representation the defendant received. *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). Missouri Supreme Court Rule 55.03 states "[a]n attorney who appears in a case shall be considered as representing the parties for whom the attorney appears for all purposes in that case, except as otherwise provided in a written entry of limited appearance." Rule 55.03 provides three ways an attorney can appear: (1) participating in any proceeding as counsel for any party unless limited by an entry of limited appearance; (2) signing any pleading, motion, or other filing unless otherwise identified as having only assisted in the preparation of the pleading, motion, or other filing; or (3) filing a written entry of appearance.

Here, the motion court concluded Hufty acted as Movant's attorney by appearing in court on his behalf and filing papers with the court. No evidence was presented to suggest Movant was dissatisfied with Hufty's representation until after he was convicted and received an unfavorable sentence. Nothing in the record supports Movant's claim Hufty's representation was forced on him. If Movant did not want Hufty to represent him, he had ample opportunity to make his objections known. We defer to the motion court's credibility findings, *Twenter*, 818 S.W.2d at 635. The motion court did not clearly err in concluding Movant was not abandoned by counsel or deprived of the counsel of his choice.

(Ex. 15, pp. 12-14.)

As the appellate court noted, Petitioner's argument implicates his right to go to trial with counsel of his choosing. "[A]n accused who is financially able to retain counsel of his own choosing must not be deprived of a reasonable opportunity to do so." *United States v. Gonzalez–Lopez,* 399 F.3d 924, 929 (8th Cir. 2005). However, "[t]he right to retain counsel of one's choice is not absolute.... The right to choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice." *Id.; see also Williams v. Nix,* 751 F.2d 956, 959 (8th Cir. 1985); *Urquhart v. Lockhart,* 726 F.2d 1316, 1319 (8th Cir. 1984).

As noted above, Petitioner was represented by Mr. Niehoff and his associate Mr. Hufty, and Mr. Hufty handed the majority of the court dates, including representing Petitioner at trial. At no point did Petitioner alert the trial court that he was unhappy with Mr. Hufty's representation until after he was convicted and received an unfavorable sentence. *See Nerison v. Solem*, 715 F.2d 415, 418 (8th Cir. 1983) ("The right to effective assistance of counsel may not be improperly manipulated by an eleventh hour request to obstruct the orderly administration of justice."). Petitioner does not dispute this. Now Petitioner argues that his chosen and retained trial attorney, Mr. Niehoff, failed to communicate with him, leaving him to his less experienced associate, Mr. Hufty, and Petitioner is entitled to habeas relief because it is reasonably probable that the outcome

of his case would have been different if he had been represented by experienced trial counsel capable of recognizing and exposing weaknesses in the prosecution's case. Under the circumstances of this case, the Court cannot say that the state appellate court's adjudication of this claim was unreasonable or a misapplication of federal law. As the state court reasoned, Petitioner did not alert the trial court he felt Mr. Niehoff abandoned him until sentencing, and nothing in the record suggests Mr. Hufty's representation was forced on Petitioner. By the time Petitioner raised his choice of counsel concerns at the sentencing phase, it was too late for the court to address Petitioner's concern or entertain a motion for substitution of counsel. Petitioner has not established abandonment or deprivation of his right to counsel of choice, nor has he established prejudice. Ground 8 is denied.

## H. Ground 9

In Ground 9, Petitioner asserts ineffective assistance of counsel based on his attorney's failure to impeach Pham regarding her prior inconsistent description of clothing worn by the robber of JN Market.

Petitioner raised this claim in his post-conviction appeal, and the appellate court found:

> In Point V, Movant argues the motion court clearly erred by concluding his trial counsel was not ineffective for failing to impeach witness Kathi Pham regarding her prior inconsistent statements about the JN robbery. Pham initially told police the robber was wearing a black hoodie. At trial, Pham identified a dark green jacket. Movant argues the JN surveillance video shows the green jacket presented at trial was not the jacket Pham described. Movant claims he was prejudiced because trial counsel failed to impeach Pham about her description of the robber's clothing. Movant notes trial counsel admitted he could have impeached Pham's identification.

> The extent to which counsel impeaches a witness is a matter of trial strategy and must be left to the judgment of counsel in virtually every case. *White v. State*, 939 S.W.2d 887, 897 (Mo. banc 1997). "Many inconsistent statements are so insignificant as to be meaningless and others are so easily explainable as to not justify being presented at trial." *Id*. Failing to impeach a witness is not independently sufficient to support a claim of ineffective assistance of counsel,

particularly when the impeachment involves minor and immaterial details that are not central to the crime. *Gray v. State*, 139 S.W.3d 617, 622-23 (Mo. App. W.D. 2004). Movants must establish "impeachment would have provided the movant with a defense or would have changed the outcome of the trial." *Id.*

The defense theory was misidentification. The State argues trial counsel reasonably focused cross-examination on the deficiencies in Pham's identification of Movant instead of distracting the jury with collateral details. The State notes trial counsel got Pham to admit she turned away from the robber and did not notice his eyes, lips, or face tattoo. The State argues the jacket color discrepancy was inconsequential compared to the more important inconsistencies trial counsel highlighted on cross-examination. The State reasons if the jury was unpersuaded by Pham's inability to recognize Movant's facial features, her equivocation about the color of his jacket was unlikely to change their minds.

We find no clear error in the motion court's conclusion trial counsel made a reasonable strategic decision to focus on the most important inconsistencies in Pham's testimony while excluding other, minor discrepancies. *Gray*, 139 S.W.3d at 622-23. Further, we find no clear error in the motion court's conclusion Movant was not prejudiced because the evidence was overwhelming. The jury viewed JN's surveillance video, Pham identified Movant in court and Movant's girlfriend identified him based on footage from JN's surveillance cameras. Pham's inconsistent description of the robber's jacket color on cross-examination would not have changed the outcome.

(Ex. 15, pp. 14-15.)

Petitioner cites to *Driscoll v. Delo,* 71 F.3d 701 (8th Cir. 1995), for the proposition that counsel's failure to cross-examine the prosecution's eyewitness as to her inconsistent identification testimony should result in the granting of habeas relief. (ECF No. 20, p. 22.) In *Driscoll,* the Eighth Circuit found constitutionally deficient performance of trial counsel where counsel failed to cross-examine a witness who made grossly inconsistent prior statements. *Driscoll,* 71 F.3d at 710 (witness testified that he saw Driscoll stab the victim and Driscoll subsequently talked to the witness about how he "took out" the victim, despite the witness's statements prior to trial wherein he did not say that he witnessed the stabbing, nor that Driscoll admitted to it). The court notes that *Driscoll* was decided before the Anti-terrorism and Effective Death Penalty Act (AEDPA) was enacted in 1996. It is the restrictive provisions of AEDPA that apply to this Court's review of the

29

state habeas court decision in Petitioner's case, not the more lenient pre-AEDPA standard. Additionally, *Driscoll* is an Eighth Circuit case, not a Supreme Court case. Therefore, to the extent Petitioner is arguing that the appellate court's decision runs afoul of *Driscoll,* the state court's analysis involves no unreasonable application of United States Supreme Court precedent. *See* § 2254(d). Moreover, an inconsistency in identifying a black hoodie vs. a dark green jacket does not rise to the level of the grossly inconsistent statement in *Driscoll. See, e.g., Johnson v. United States,* 278 F.3d 839, 843 (8th Cir. 2002) (A petitioner cannot show prejudice from failure to impeach a witness where the inconsistencies in a witness's pretrial statements and trial testimony are "very slight," because the likelihood of a different result must be considered in light of the evidence as a whole).

Upon consideration, the Court finds the Missouri courts reasonably applied *Strickland.* Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel. *United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011) (citation omitted). Here, trial counsel's lack of cross-examination regarding the inconsistent observations of the robber's wardrobe did not allow inadmissible devastating evidence to be entered or grossly inconsistent prior statements to go unchallenged. Counsel elicited other impeachment testimony regarding Pham's focus on the gun and her turning away from the robber, as well as her inconsistent prior statements to police regarding Petitioner's facial features, supporting his theory of misidentification. (*See, e.g.,* Ex. 22, pp. 123, 126-128.) *See also Parker v. Bowersox,* 188 F.3d 923, 928 (8th Cir. 1999) (counsel does not perform deficiently in cross-examining a particular witness if counsel does elicit testimony that calls the witness's credibility into question and points out the weaknesses of the witness's story). Further, a failure to impeach constitutes ineffective assistance only when there is a reasonable probability, absent counsel's failure, the jury would

have had reasonable doubt of the Petitioner's guilt. *Id*. Here, the Court cannot find that, but for trial counsel's alleged error, the outcome of Petitioner's trial would have been any different. *Strickland*, 466 U.S. at 694 (To establish prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). Impeachment of Pham's collateral statements would not have provided Petitioner with a defense in light of the surveillance footage and testimony of Petitioner's girlfriend identifying Petitioner. Petitioner has failed to demonstrate prejudice. Ground 9 is denied.

## I.  Ground 10

In Ground 10, Petitioner asserts ineffective assistance of counsel based on the failure of trial counsel to investigate the facts of the case and impeach Detective Reiland regarding the clothing that Petitioner was wearing at the time of his arrest.

Petition raised this claim in his post-conviction appeal, and the appellate court's findings are as follows:

> In Point VI, Movant argues the motion court clearly erred by concluding trial counsel was not ineffective for failing to rebut a detective's testimony about the clothing Movant was wearing when he was arrested. Detective Reiland of the Florissant Police Department investigated the BP, JN, and Arby's robberies. On February 26, 2013, Detective Reiland traveled to Movant's home, where he observed Movant on the sidewalk outside. Detective Reiland noticed Movant was wearing a coat like the one used in the JN robbery, and black boots and mismatched grey and black gloves like the Arby's robber.
>
> Movant asserts Detective Reiland was lying. Movant claims he was wearing his work uniform, a red Cardinals pullover, and matching black gloves. Movant argues reasonably effective trial counsel would have discovered Detective Reiland's testimony was false by looking at Movant's booking photograph. Trial counsel testified he saw Movant's booking photograph in discovery but did not investigate whether Detective Reiland's version of events was accurate. Movant argues the outcome of his trial may have been different if trial counsel rebutted Detective Reiland's testimony because it would have reduced his credibility with the jury and supported Movant's argument the police failed to thoroughly investigate the robberies before charging him. Movant did not introduce his booking photograph into evidence at the evidentiary hearing.

The State argues trial counsel's decision not to rebut Detective Reiland's testimony was a reasonable strategic choice and notes Movant failed to produce evidence establishing the accuracy of his claims. The State argues the evidence of Movant's guilt was overwhelming and asserts it would have been futile for trial counsel to rebut Detective Reiland's testimony.

To establish counsel was ineffective for failure to investigate, movants must (1) specifically describe the information trial counsel failed to discover, (2) establish that a reasonable investigation by trial counsel would have resulted in the discovery of such information, and (3) prove the information would have aided or improved his position at trial. *State v. Stewart*, 850 S.W.2d 916, 921 (Mo. App. W.D. 1993). The motion court concluded trial counsel made a reasonable strategic trial decision not to rebut "small" discrepancies in Detective Reiland's testimony because they were not worth fighting over.

The motion court found Movant failed to prove he was prejudiced by trial counsel's failure to rebut Detective Reiland's testimony about Movant's clothing. At trial, the State produced eyewitness testimony, physical evidence, surveillance and cell phone video footage, and cell tower data indicating Movant committed the charged crimes. Movant introduced no proof of his claim he was wearing different clothes than described by the detective into evidence at the evidentiary hearing. The motion court concluded Movant did not meet his burden. *Nicklasson*, 105 S.W.3d at 484.

Considering the quantity and quality of physical, testimonial, and circumstantial evidence indicating Movant committed the charged crimes, we find no clear error in the motion court's conclusion trial counsel was not ineffective for failing to rebut Detective Reiland's testimony about Movant's clothing during his arrest. Movant's claim the jury would have discredited Detective Reiland's testimony is speculative. Considering all the circumstances, Movant's claims cannot overcome the presumption trial counsel's strategy was reasonable. *Cusumano*, 495 S.W.3d at 235.

(Ex. 15, pp. 15-17.)

As discussed above, courts "generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011) (quoting *United States v. Villalpando,* 259 F.3d 934, 939 (8th Cir. 2001)). Even where unreasonable performance is shown, it may be difficult to show the requisite prejudice, because "it is very difficult to show the trial outcome would have been different had specific

questions been asked on cross examination, particularly where other trial testimony repeatedly corroborated the [challenged] testimony." *United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011). Here, trial counsel cross-examined Detective Reiland. (Ex. 23, pp. 73-112) The appellate court found that Petitioner did not present evidence that Petitioner was wearing different clothes than those described by Detective Reiland at trial beyond Petitioner's own testimony regarding his clothing. Additionally, in light of the cumulative evidence against Petitioner independent of Detective Reiland's testimony, the appellate court found he could not establish prejudice. Petitioner's arguments here have not demonstrated, by clear and convincing evidence, that the appellate court's decision is an unreasonable determination of the facts or an unreasonable application of clearly established federal law. Therefore, the decision is entitled to deference. Ground Ten is denied.

### J.  Ground 11

In Ground 11, Petitioner asserts ineffective assistance of counsel based on trial counsel's concession during summation that Petitioner was guilty of the JN Market robbery and Dollar General attempted robbery.

In his closing statement at trial, counsel discussed the robberies and attempted robberies for which Petitioner was on trial. After arguing there were glaring deficiencies in the eyewitness accounts from the BP and Arby's robberies and the Billy Cox assault, trial counsel stated to the jury:

> Now, Kathi Pham – and of all these cases the best ones for the State are JN with Kathi Pham, all right, and the Dollar General with Daysha Johnson. Because those two witnesses – I'm not telling you they're lying, I'm not saying that; I'm telling you they misremember what's going on, and it's because of what they know because of what they've been told by police, because what they've been told by the State, because of why they're here. They know why they're here. That's why they misremember things.

33

(Ex. 24, p. 37.) Trial counsel then highlighted discrepancies in the witnesses' testimony. He explained that although Pham and Johnson identified Petitioner, they were focused on the gun, not the robber. "She can tell you all about this gun, and that's because she was focused on the gun, all right? And then focused on her life. That's why it's just a mistaken identification. It happens. It happens." (*Id.* at 38.) Petitioner argues that trial counsel's statements about JN Market and Dollar General being "the best counts for the State" is effectively a concession that Petitioner was guilty of those two robberies.

Petitioner raised this claim in his post-conviction appeal, and the appellate court found no clear error:

> In the State's rebuttal argument, the prosecutor stated, "[t]he one thing that [trial counsel] and I do agree on, you can't get past that JN robbery, ladies and gentlemen . . . . Dollar General, again, we know that's him." Movant reasons the State interpreted trial counsel's statement as an admission of guilt and the jury likely did too, "infect[ing] the jury's decision-making finding [Movant] had gone [on] a robbery spree." Movant argues trial counsel's statement violated his right to effective assistance of counsel.

> When a criminal defendant insists on maintaining his innocence, trial counsel cannot override that objective by conceding guilt. *McCoy v. Louisiana*, 138 S.Ct. 1500, 1508 (2018). Conceding a client's guilt without consent is a structural error and does not require showing prejudice. *Id.*

> We find no clear error in the motion court's conclusion trial counsel did not concede Movant's guilt in closing argument. The motion court found – and we agree – trial counsel's statement was not a concession of guilt; it merely pointed out the differences in the quality of evidence between the charges. Movant faced five robbery or attempted robbery charges and each charge was supported by different evidence – in fact, the jury acquitted Movant of the BP robbery. Immediately following trial counsel's alleged concession, trial counsel reminded the jury of the witnesses' inconsistent descriptions of their robbers and argued the witnesses at JN and Dollar General misidentified Movant. On these facts, we find no clear error in the motion court's conclusion trial counsel never conceded guilt. Trial counsel explicitly argued the witnesses were wrong.

(Ex. 15 at 17-19.)

As an initial matter, Petitioner's claim has two components, one "structural" and one falling under *Strickland*'s familiar standard. *See, e.g., United States v. Felicianosoto*, 934 F.3d 783, 786 (8th Cir. 2019) (stating that disregarding client's wishes with respect to conceding guilt is a structural error); *McCoy v. Louisiana*, 584 U.S. 414, 427-28 (2018) (distinguishing a "structural" Sixth Amendment challenge from an ineffective assistance of counsel challenge). The "structural" component addresses defense counsel's alleged decision to concede guilt without discussing the decision with his client. By "block[ing] the defendant's right to make the fundamental choices about his own defense," counsel infringes upon a defendant's constitutionally protected autonomy to control his own defense. *McCoy*, 584 U.S. at 428. This violation is independent of the right to competent counsel. *Id.*

Here, the motion court and appellate court agreed that trial counsel did not concede Petitioner's guilt, he was merely pointing out the differences in the quality of the evidence between the charges. Their factual finding is consistent with the testimony of trial counsel at the postconviction hearing. (*See* Ex. 7, pp. 32 ("I certainly don't think or agree with your position or Mr. Cosby's position that is conceding guilt. That—I think what—at least based on what I heard in this courtroom right now, I was trying to suggest that some of the other counts, evidence should be automatic not guilties and the other ones you may have to think about a little harder. But I definitely don't see that as conceding guilt."). Notably, Petitioner does not argue the state courts' fact finding was unreasonable, they merely rely on *McCoy* in arguing structural error. However, trial counsel did not concede Petitioner was guilty, and therefore, the holding in *McCoy* has no application to the facts in this case.

Additionally, Petitioner's claim for habeas relief based on *Strickland* has no merit. Petitioner argues reasonably competent counsel would have not admitted the defendant's guilt;

however, counsel did not concede Petitioner's guilt, and therefore cannot be found ineffective for such a concession. The Court of Appeals was not unreasonable in its fact finding or its application of federal law. Ground 11 is denied.

### K.  Grounds 12 and 13

In Grounds 12 and 13, Petitioner asserts ineffective assistance of counsel based on trial counsel's failure to object to the acceptance of verdicts finding him guilty of robbery (or attempted robbery) and armed criminal action for the same underlying offenses (Ground 12) and based on appellate counsel's failure to argue on direct appeal that the trial court erred in accepting the verdicts finding him guilty of robbery (or attempted robbery) and armed criminal action for the same underlying offenses (Ground 13).

Specifically, Petitioner argues that he received ineffective assistance of trial counsel and appellate counsel based on their failures to raise arguments based on "the limitations upon multiple convictions established by Mo. Rev. Stat. § 556.041 and recognized in *State v. White,* 633 S.W.2d 173 (Mo. App. W.D. 1982)." (ECF No. 1 pp. 24-25.) In *White,* the Missouri Court of Appeals vacated a conviction for armed criminal action. White was convicted of burglary first degree, stealing, rape, and armed criminal action. On appeal, he argued that a court may instruct on both armed criminal action and the underlying felony of burglary, but may only convict of one of them pursuant to Mo. Rev. Stat. § 556.041. The appellate court agreed, relying on *State ex rel. Westfall v. Ruddy,* 621 S.W.2d 42, 45 (Mo. 1981) (en banc). *See State v. White*, 633 S.W.2d 173, 177 (Mo. Ct. App. 1982).

The motion court found Petitioner's argument to essentially be one of double jeopardy and instructional error by the Court, which is a matter for direct appeal and not cognizable in a post-

conviction relief. (Ex. 10, p. 129.) At his post-conviction appeal, the appellate court also rejected

Petitioner's arguments:

> Although *White* has never been formally overruled, section 556.041 does
> not prohibit simultaneous convictions for first-degree robbery and armed criminal
> action. *State v. Flenoy*, 968 S.W.2d 141, 145 (Mo. banc 1998). This Court has
> rejected similar cumulative punishment challenges to first-degree robbery and
> armed criminal action convictions. *State v. Clark*, 494 S.W.3d 8, 12-13 (Mo. App.
> E.D. 2016).
>
> Section 556.041 states the legislature intended to permit convictions and
> punishments for multiple offenses in the same course of conduct without violating
> double jeopardy, unless (1) one offense is included in the other, (2) inconsistent
> findings of fact are required to establish the commission of the offenses, (3) the
> offenses only differ in that one is defined to prohibit a designated kind of conduct
> generally and the other to prohibit a specific instance of such conduct, or (4) the
> offense is defined as a continuing course of conduct and the person's course of
> conduct was uninterrupted, unless the law provides that specific periods of such
> conduct constitute separate offenses. None of these exceptions apply to first-degree
> robbery. *Flenoy*, 968 S.W.2d at 145. We hold the motion court did not clearly err
> by concluding trial and appellate counsel were not ineffective for failing to argue
> Movant's rights under section 556.041 were violated under double jeopardy or any
> other theory.

(Ex. 15, pp. 19-20.)

In his habeas petition, Petitioner once again points to *White* and Mo. Rev. Stat. § 556.041.

Petitioner does not address *Flenoy* or *Clark,* the post-*White* decisions relied on by the appellate

court. More importantly, Petitioner does not argue, and the undersigned does not find, that the

appellate court's decision was contrary to, or an unreasonable application of, clearly established

federal law. Indeed, "the Missouri legislature...expressed its clear intent that a defendant be subject

to conviction and sentence under the armed criminal action statute in addition to any conviction

and sentence for the underlying felony." *Missouri v. Hunter*, 459 U.S. 359, 363–64 (1983); *see*

*also United States v. Miranda-Zarco*, 836 F.3d 899, 901 (8th Cir. 2016) ("The Supreme Court of

Missouri has held that robbery and armed criminal action 'are not the same offense' for purposes

of multiple prosecution because 'the expressed intent of the legislature' is to punish for the offenses

cumulatively.") (citing *State v. Flenoy*, 968 S.W.2d at 144-145); *State v. Blackman*, 968 S.W.2d 138, 140 (Mo. 1998) ("Because [Missouri's Armed Criminal Action] statute expressly states punishment for armed criminal action is 'in addition to' other punishment defendant may receive for the felony committed, it clearly establishes the legislature's intent to provide for successive punishment for those crimes."); *State v. Hyman*, 37 S.W.3d 384, 391 (Mo. Ct. App. 2001) ("[W]hatever the underlying felony may be, armed criminal action carries a separate, distinct, and additional punishment."). Petitioner cannot establish that trial counsel's performance was constitutionally defective based on failure to raise a nonmeritorious claim, nor can he establish that he was prejudiced by the lack of objection. For the same reasons, Petitioner cannot establish he was prejudiced by appellate counsel's failure to make a plain error claim based on the trial court's acceptance of the verdicts. *See Jones v. Brewer*, No. 4:20CV692 RHH, 2023 WL 3477940, at *2 (E.D. Mo. May 16, 2023) ("The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in *Strickland*" and "if an issue an appellate attorney failed to raise on appeal is not meritorious, then appellate counsel cannot be considered ineffective for having failed to argue that issue on appeal.") (internal quotations omitted). Petitioner is not entitled to relief on Grounds 12 or 13.

## IV.    CONCLUSION

Based on the foregoing, the Court finds that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied. Because Petitioner has made no showing of a denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that a separate judgment will be entered this same date.

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion for a Certificate of Appealability will be **DENIED**.

Dated this 27th day of March, 2025.

_____
RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE